We'll now turn to the last argument for the calendar this morning. That's United States versus Holmes. Mr. Bryan, are you on the line? Yes, I am, Your Honor. Thank you. Good. I can see and hear you loud and clear. Ms. Lash? Yes, Your Honor. I'm here. There you are. Okay. I can see you and hear you as well. All right. You've got 10 minutes each. Mr. Bryan, you've got one minute of rebuttal that you've reserved, so that gives you nine to start. So you may Thank you. Thank you, Your Honors. Good morning. May it please the court, I represent Mr. Holmes and contend that this appeal is determined by this court's decision in Brooker and that this case should be remanded to the district court where it would exercise its discretion in considering any reasons that Mr. Holmes might raise in support of his compassionate release motion. And I stress the word any in Brooker. This court said the word any several times and once even italicized it. It meant what it said. Well, can I interrupt there for a second, Mr. Bryan, because clearly the district court relied on an understanding of the law that we've since clarified. And so I agree with you, Zulo or Brooker, however you want to call it, that that has changed whether or not the application note has any reference or any, it's not relevant for this motion. But later in, I guess it was August, there was a second COVID related compassionate release motion filed by your client. And the same case, same client did a 3553A analysis and concluded that those factors argued against compassionate release. So is there any point in sending this back when the judge has already done this as recently as August? Well, I would say it's a different context here. I mean, this motion. Well, how are the 3553A factors any different in January of 2020 than they were in August of 2020? Well, first it's two different prisms that are applied here, let's say to the same facts. And there is the ability to bring a compassionate release motion. There is, the law provides abilities to, under the circumstances, unless waived, the right to motions. Now the government here, one of its arguments essentially makes two arguments. One, its first argument, by the way, is statutory construction. And I submit that this court and Brooker went through extensive statutory construction in which it considered the text of the First Step Act, legislative history, the statute as being clear. And I just want to read this one sentence from Brooker. The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone is not to be considered an extraordinary and compelling reason. And it cites then 28 U.S.C. 994 subparagraph T. And I could quote so many other Now it doesn't mean that a judge will find it compelling and extraordinary. But I don't mean to interrupt you, but I understand that completely. But in August, what Judge Ammon said was that even assuming that the extraordinary and compelling circumstances were demonstrated, an analysis of the relevant 3553A factors poses an insurmountable obstacle to your client's release because of violence and criminal history, risk of recidivism, etc. I would submit the carts before the horse. I think the first here, the judge is commenting on something in a 2255 petition when here, if we if we go back and we say if we start with the holding in Brooker that a court may consider any reason. And this is the second argument that's any legal reason. If there's a legal injury, in other words, if you have a right or you could have and didn't or did bring on direct appeal or in a 2255 motion these reasons, then it's it's you can't bring it in a compassionate release motion. And I submit in particular where the government is arguing here is that and it is said that that this court in Brooker only in dicta suggested that a reason by a defendant that his sentence is too long can't be brought. And also trying to say that this court should use a rule of construction to interpret the statute that has already been in Brooker to say, no, it's any reason regardless. So what Brooker says is it doesn't matter if it could have been brought in a 2255. You can still independently bring it in a compassionate release motion. And the proof of that is that in Brooker, the defendant was Zulo. He alleged the very same reason as Brooker, as Mr. Holmes does here. And that is in Zulo, Mr. Zulo alleged the sentence was too long. And the backdrop of that was that it was there was some question at the time when he entered his plea, whether a 924 C was to have sentenced consecutively, the judge, you know, enters it less, it goes up on appeal, this court and then the Supreme Court in Abbott says no, it has to be consecutive, it gets sent back. He then in a 2255 motion, this is Mr. Zulo argues the same fact in relation to an ineffective assistance of counsel claim, which is then rejected. So there's it's not only that it's been litigated in a 2255. And yet this court in Brooker said no, you can it has to go in a compassionate release motion, which is it just looks at it in a different prism. Is it is this reason? Does it meet the standard of the First Step Act? So I submit it is still very much alive, that it's not something that can be handled in the context of a 2255 motion. It is something that needs to be sent back in this case. Do you have any reason to think that the analysis on of the 3553 A factors will be different this time than it was in August? Well, again, under Brooker, if you look at what Mr. Zulo did, he had a single fact that he was brought. And then this court without expressing opinion. And that's another thing that, you know, this court has the power on remand to give instructions to to the lower court, you know, to frame out it didn't, this court didn't say any particular reason was compelling. For example, my sentence is too long. But it said that the court can consider facts, either in combination or in isolation, whether they're extraordinary. And then then this court started saying, facts that Mr. Zulo did not raise in his 20 in his compassionate release motion, such as COVID, his age, that sort of thing. So say, for example, here, I, you know, again, I, you know, we're going outside the record, but not quite. Mr. Holmes here is, he was 43 years of age is older now. I mean, it's one factor that, that comes into play is his risk of recidivism at a later age. So that would certainly be something to to raise. I don't, I don't know if there are other things that can be raised. But I would say Brian, I'm not sure I understand. I may be just confused. Were there two different compassionate release applications made? Your Honor, I'm not familiar. And Judge Sullivan, I I'm not aware of the of the one you're mentioning in August, I thought there was a single application. And then there was extensive briefing. And at the end of the day, what the court said was, A, I don't think this is a valid reason. But B, anyway, I balanced the 3553A factors in light of everything that's before me. And I decide to deny the application. Is that not what the Judge Ammon did here? I would, that's not my reading of the judge's decision. Okay, so please, please tell me what your reading is. And where the judge, it's really the reasoning process that brings out what the judge, what the judge did, and how the judge felt bound. It's reasonable to conclude the judge felt bound by the outdated guideline and the application of the judge. I think that I think that's fair. But then does she not say that even if I'm wrong about that, I balance the factors and I decide that I'm not going to do this? Well, it what I what I would say is he then goes into the danger to the community, as and under the outdated guidelines, there is this separate provision under 1B1.113. I think it's subparagraph two, in which there's this independent finding that a judge would have to make that they're no longer a danger to the community. And so the judge said, I find he's a danger to the community. And, but is not, is not being a danger to the community, one of the 3553A factors? It's not controlling, it's not automatic, but it is one of the factors. That's, that's the point Judge Lynch. And that is here, the judge, I submit reading, as I read his decision here, he relied on and cites 1B1.13 in relation to danger to the community as what guided him to find that there would be, he would reject the compassionate release motion on that basis. And the. But would that, suppose, suppose a judge said, instead, I agree with you that I'm not bound by that guideline. So I now go and balance the 3553A factors. But what I think is the fact that this person is in danger means I'm just not going to do this. That's how I balance it. I think that outweighs whatever else is on the other side, balancing the 3553A factors. That would be an unreasonable decision? Judge, I'm going back to what, how I read the judge's decision here that he did not balance it as one of several factors and make that conclusion, but that he followed the outdated guideline and found the factor still a danger to the community. And that was the end of the analysis. And that's under the old guideline. And if I might cite to the court the recent, within the last month, the District of Columbia's decision in Long, where they reversed on that basis. It was all about the finding, sole finding on the danger to the community under the outdated standard and the guideline standard, and that there had to be a balancing. And it was sent back to the district court to say, you have to look at this as one factor in conjunction with others. So, Judge Lynch, I know how good you are at reading these things. My reading is, as I read this decision, that it is, he relied on the old guideline, that extra provision that's in there that requires a finding just on danger to the community. And if you find that it, the game is over. Thank you. You reserved a minute. So we'll now hear from the government. May it please the court. I'm Devin Lash and I'll be arguing on behalf of the United States. Your honors, remand is not necessary here because as Judge Sullivan, you stated the district court decided not to grant relief under these 3553A factors. And Judge Lynch, just to clarify some of the procedural background, there are two compassionate release motions in this case. The defendant filed one at the end of 2019, which the district court denied in the instant decision before your honors in the record. And while this decision was pending before the circuit, the defendant filed another motion for compassionate release in June of 2020, which the district court, assuming that it retained jurisdiction over this, again, denied and cited the 3553A factors. Can I interrupt for a second though? So the January ruling, that's the one on appeal in front of us, didn't really talk about the 3553A factors at all, right? No, your honor. It did talk about the 3553A. It talked about 3142 and dangerousness to the person's dangerousness, because that's what's covered in the application note to 1B 1.13. But it really, Judge Hammond didn't really do a 3553A analysis, did she? Well, your honor, the court says, and this is on page 259 of the record, in an exercise of discretion, it's denying it based on the guidelines, 18 USC 3553A. So she, she cites those factors right off the bat on the first paragraph of her decision. And then you are correct that when she's discussing these factors, she is discussing them in the light of 3142. However, these factors remain the same and they're, they're baked into 3553A, the nature of the circumstances of the crime, the history of the defendant. And she discusses his long criminal history. I get all that, but 3142 is much more limited than 3553A. Wouldn't you agree? It is more limited. There are more considerations that a court can look to under 3553A, but the district court considered those factors and weighed against it. The defendants proffered rehabilitation and found that this rehabilitation didn't outweigh the risk of the danger to society. I'm sorry to interrupt you again, but just the August ruling, which is a COVID compassionate release, that one does a full-blown 3553A analysis, right? That's correct, Your Honor. So to that point, remand here isn't necessary because Judge Ammon is not going to grant relief on appeal. She's already done the 3553 analysis that's required here. But to your point about the 3142 factors, to remand on that basis, putting aside the August ruling would send the message to district courts that it couldn't deny relief when a court believed that public safety was at risk. And that can't be the case here. Danger alone has to be sufficient under the 3553A factors. And I will say that my opposing counsel's point about the district, the D.C. circuit's ruling in Long is correct, and there was a remand there because the court only engaged on the 3142 sort of analysis. But here, that's not on point again because the district court cited to the 3553A factors and performed a balancing test. I would also like to discuss if the court is willing... Ms. Lash, let me try to separate out some of these issues so I'm clear on what you're saying. One of the government's points is that maybe contra the D.C. circuit or maybe not. Your argument is when the judge is imposing in the first instance, the judge is entitled to weigh the 3553A factors. And if the judge decides this person is a danger to the community, and that is the predominant thing that justifies this sentence in my mind, and given what a danger he is, that outweighs all the other factors that could be abused in his behalf. That would be a legitimate weighing of the 3553A factors. Is that what you're saying? Your Honor, I don't think we have to reach that question here because obviously this is a compassionate release moment. The 3553A factors have already been weighed, and I'd further point... No, no, but the 3553A factors are the same factors. I thought I was helping you, but maybe I'm not. I thought that at a sentencing, when you weigh the 3553A factors, the district court gets to weigh them and might conclude that one outweighs all the others. And the next question would be, so isn't it your position then that on the compassionate release, it's the same deal? It's not error for the judge to say, I'm putting all my chips on the danger to the community. That might, in a particular case, be a perfectly rational way to decide this, of the no longer applicable sentencing guideline that addresses compassionate release. Is that not what you're saying? That's correct, Your Honor. Yes. Okay. So that's one issue. Now, the second issue comes up with this issue of the two compassionate release decisions. I understand that you're saying that the judge did essentially the same thing in the first one as she did in the second one. But Judge Sullivan makes a point, raises the question, but she was doing it in regard to the section 3142, not 3553. Suppose we concluded that there wasn't really a the first time. But then the judge does the 3553 analysis on the second compassionate release motion. Is that really transferable? In other words, suppose the reason for the... In the second one, the reason is COVID. And everybody and his brothers making COVID applications. And it may depend a lot on... It may just not be that compelling, depending on the particular circumstances of this individual's health, the particular circumstances of the particular prison, and so forth. And against that backdrop, the 3553A factors counsel against compassionate release. But now if you take that back to the first application, he's got a rather different compelling circumstance, one that the district court may have regarded as sort of illegitimate, though apparently under Brooker it is not illegitimate. Might that not make for a different balance if you've got a different reason for compassion? Maybe in some cases, Your Honor, but certainly not here when the factor on the other side is dangerousness. And if you compare the analysis done in Judge Ammon's first opinion to the analysis done in Judge Ammon's second opinion, what she says is she looks to the nature and circumstances and history of this defendant, who has a long criminal history, proven serious, uncharged, but still proven conduct, and the public safety remains at risk. So in answer to your question, if that's the factor on the other side, then it doesn't matter what the reason is that the it's always going to come out that the 3553A factors weigh against compassionate release. So maybe what you're saying in effect is that it's something of a red herring to look at the guideline here, that just because it was put into a guideline that no longer is applicable to say that dangerousness trumps doesn't mean that dangerousness can't trump. It just means it doesn't trump because there's a guideline to that effect. You're saying a district judge is at a minimum entitled to conclude that dangerousness trumps. And I suppose in an appropriate case, the government might be here making an argument that we should reverse a judge who said this guy's terribly dangerous. But because of A, B, C, and D, I'm going to let him out anyway. The government might take the position that this should be. That would be an abuse of discretion. I'm not saying you have to say that here, but you're coming close to it, it sounds like. Yes, Your Honor. I think that's exactly right. Can I ask one question about exhaustion? I mean, there is a disputed issue fact with respect to exhaustion. It's not clear that Judge Ammon ever decided that issue. And so what does that mean? If she didn't decide that, do we get to decide it first? Does it have to be decided first? No, Your Honor. Judge Ammon's decision rests on the analysis that the defendant is denied compassionate release for other reasons. The 3553A factors, the dangerous analysis that we talked about. So this court could simply affirm on that basis and not reach the question of exhaustion. Because exhaustion is not jurisdictional. Exhaustion is not jurisdictional. It's not something that we have to assure ourselves of first before we go on. It can be denied on any reason. It's like all the obstacles to habeas corpus. They just say you can't grant habeas absent, you know, if all these procedural hurdles go over. They don't say you can't deny habeas on the merits without reaching all of the, going through all the preliminaries. Yes, that's correct, Your Honor. Right, but we can't decide exhaustion here, right? I mean, we're not, we can't be the fact finder and say you did or didn't exhaust. No, Your Honor. Your Honor, I see that I've run out of time. Our brief raises other issues about the applicability of broker, about the legal distinction that we think the court can reach here. And I'm happy to answer any questions on that. But if not, the government will rest on its papers and ask that you affirm the district court's rule. All right, hearing no further questions, we'll have one minute of rebuttal from Mr. Bryan. Thank you, Your Honors. Judge Sullivan, just with respect to the exhaustion issue, there is a question of fact with going on with that. The government, as I recall, initially in the district court said it didn't talk to the Bureau of Prisons. It did not see the request of the BOP director for a motion. But then in a reply brief, Mr., or a reply to it, Mr. Holmes attached a letter which he said was the letter that he sent to the BOP in which it asked for the BOP director to, you know, do a motion. So there's a factual question there. And I think it'd be correct that it wouldn't be, it would be addressed below. Talking about that there are these two motions, and it appears what the situation is that there are different reasons that have been raised in motions. And I would submit that if we were to say looking at the first motion, which is the subject of this appeal, that the district court erred in exercise of how it should look at this, that it feeling bound by the guidelines. The question that arises because it's a different motion, or on a different reason, whether the first compassionate release motion infected the second. And actually, they really should have been combined if you think about it, because you can bring multiple reasons in a single motion. As this case, this court in Broker said, by the way, can bring COVID up too. And the thing about what the analysis should be by a court is whether a reason by itself or in combination should result in compassionate release. So say, for example, supposing there were, I understand here, Mr. Holmes has a tough road to go if this is sent back and making his case for compassionate release, saying his sentence is too long. But let's suppose it was a sentence that is way too long. And that then becomes a very strong driving factor alone that would even outweigh his dangerousness to the community. Because it's just as you look at everything together. So I think what we what really is what we're talking about is the process here. And the contention that shouldn't this one we're talking about this before the court be sent back, let the district court examine it as this court directs in Broker and the chips fall where they do then. Okay, thank you both. We will reserve decision. That concludes our arguments on the calendar for this morning. Before I adjourn court, let me just thank Ms. Rodriguez and all the staff who make this virtual oral argument work. It really does require a lot of people who are very good at what they do. And so I'm pleased it went so smoothly today. So thanks to all of them. Ms. Rodriguez, you can adjourn court. Court is adjourned.